UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| DERWOOD STEWART d/b/a, )<br>STERWART'S NURSERY AND FARM )<br> )<br> )<br> )<br> )<br>  Plaintiff, )<br> )<br>vs. )<br> )<br>FEDERAL CROP INSURANCE )<br>CORPORATION; RISK MANAGEMENT )<br>AGENCY; UNITED STATES DEPARTMENT )<br>OF AGRICULTURE; AND GREAT AMERICAN )<br>INSURANCE COMPANY )<br> )<br> )<br> )<br>  Defendants. )<br> )<br> )<br> ) | Case No.: 4:09-CV-101<br><br>Magistrate Judge Susan K. Lee |

## BRIEF IN SUPPORT OF RECORD REVIEW UNDER THE APA

Defendants, Federal Crop Insurance Corporation, an agency of the United States Department of Agriculture, the Risk Management Agency, also an agency of the United States Department of Agriculture, and the United States Department of Agriculture ("The Federal Defendants"), by and through James R. Dedrick, United States Attorney for the Eastern District of Tennessee, pursuant to this Court's Order of May 11, 2010 (Doc. No. 20) submit this brief in support of the Government's contention that this case should be reviewed on the record.

## BACKGROUND INFORMATION

The Federal Crop Insurance Corporation ("FCIC" or "Corporation") is a corporate body that was created by Congress as an agency of the United States Department of Agriculture under the provisions of the Federal Crop Insurance Act ("FCIA" or "Act"). 7 U.S.C. § 1503. The FCIA was passed in 1938 as part of President Franklin D. Roosevelt's New Deal legislation to help rescue and restore farming in America. Insurance companies were loathe to write insurance polices for crop insurance because of the inherent risks of insuring crops. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 383 n.1 (1947). The stated purpose of the Act was to "promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." 7 U.S.C. § 1502.

The FCIA was initially established to allow only the FCIC to issue crop insurance policies and handle claims. H.R. Rep. No. 96-430, at 12-13 (1979), *reprinted in* 1980 U.S.C.C.A.N. 3068, 3075. Congress, however, amended the FCIA in 1980 to authorize the FCIC to provide reinsurance to private insurance companies that insure policies purchased by producers of agricultural commodities. 7 U.S.C. § 1508(a)(1) ("[T]he Corporation may insure, or provide reinsurance for insurers of, producers of agricultural commodities grown in the United States . . . ."). Congress recognized that involving the private sector was essential to expanding the crop insurance program and helping to ensure its success. H.R. Rep. No. 96-430, at 11-14 (1979), *reprinted in* 1980 U.S.C.C.A.N. 3068, 3073-75. Congress thus directed the FCIC to provide "to the maximum extent practicable" reinsurance to insurance providers. 7 U.S.C. § 1508(k)(1) (formerly §§ 1508(h) and 1507(c)).

Reinsurance policies involve private insurance companies that sell insurance written on their own commercial paper through their own agents that are licensed by the states. FCIC issues policies and procedures, establishes standards for the private companies' policy forms[1] and premium rates, and reimburses the reinsurance companies. FCIC also works through a compliance office to protect the integrity of the crop insurance program by analyzing, reviewing, and evaluating whether laws, policies, and procedures are followed and administered correctly by private insurance providers to detect and prevent abuse in the program. FCIC does not, however, have any involvement in the servicing of insurance policies purchased by agricultural producers from the private companies. Rather, FCIC enters into Standard Reinsurance Agreements ("SRA") with the private companies that control the relationship between FCIC and the private companies,[2] premium rates, and reimbursement of the reinsurance companies.

The Act was amended again in 1994 to authorize a catastrophic-risk-protection level of insurance and to require farmers to obtain this fully subsidized crop insurance if they wanted to be eligible for certain price support programs, loans, and other benefits. The 1994 amendments also authorized USDA's Farm Service Agency to sell and service catastrophic-risk-protection policies.

Importantly, the 1994 amendments also created a new National Appeals Division ("NAD") within the Department of Agriculture to hear appeals by participants in numerous

---

[1] The terms of the insurance policy are set out in the regulations at 7 C.F.R. § 457.8.

[2] The one exception to this practice is the review of large claims. Under the SRA, the FCIC has the option to review and participate in the loss determination of any potential claim exceeding $500,000.00 This is known as large claim review and is within the sole discretion of FCIC to decide whether to participate in the claim. Standard Reinsurance Agreement (2005-2009), Section II, A 13a.

programs, including the federal crop insurance program. Pub. L. 103-354, Title II, Subtitle H, §§ 271 *et seq.*; 7 U.S.C. § 6991 *et seq.* For the crop insurance program, the Secretary initially proposed rules that would have provided for administrative review with appeal to the NAD for all claims by producers in connection with crop insurance, including those policies issued by private insurance companies (and reinsured by FCIC) and those policies issued directly by FCIC. 60 Fed. Reg. 27044, 27045, § 11.1 (May 22, 1995). However, after receiving comments explaining that the NAD would be overwhelmed with claims on the private insurance policies, the Secretary issued interim final rules in December of 1995 limiting the NAD process to only direct policies issued by FCIC. 60 Fed. Reg. 67298, 67301 (Dec. 29, 1995). Today, the regulations make clear that only adverse decisions made by personnel of FCIC or the Risk Management Agency ("RMA")[3] are subject to administrative review. 7 C.F.R. § 400.91. In fact, the regulations specifically exclude review of denials of claims made by private insurance companies on policies reinsured by FCIC.[4]

By 1998, all catastrophic-risk policies handled by the Farm Service Agency were transferred to reinsurance companies. Today, although FCIC still has statutory authority under the FCIA to sell crop insurance directly to agricultural producers, all federal crop insurance

---

[3] In 1996 Congress created the RMA within the Department of Agriculture to administer FCIC programs. RMA's mission is to promote, support, and regulate sound risk management solutions to preserve and strengthen the economic stability of America's agricultural producers. As part of this mission, RMA operates and manages the FCIC. *See* www.rma.usda.gov/pubs/rme/aboutrma.pdf.

[4] "This subpart is not applicable to any decision ...(2) Made by any private insurance company with respect to any contract of insurance issued to any producer by the private insurance company and reinsured by FCIC under the provisions of the Act,..." 7 C.F.R. § 400.91(b)(2)(emphasis added).

4

policies are sold through reinsurance.[5]

## FACTUAL BACKGROUND

Plaintiff Derwood Stewart ("Stewart"), is a resident of McMinnville, Tennessee, and is the owner and operator of a farming and nursery business known as Stewart's Nursery and Farm ("Nursery") which is located Smithville, Tennessee.[6] Defendant, Great American Insurance Company ("Great American"), among other things, sells crop insurance under the FCIA.

Great American and the FCIC entered into a SRA to insure the Nursery for the 2006 crop year. The SRA contains the obligations of the insurance company and FCIC, which include coverage for the crops, products, farm and nursery materials, and inventory of the Nursery.

The insurance policy from Great American, in conjunction with FCIC and RMA, provided coverage for damages incurred as a result of tornado and hail storms.

Plaintiff claims that on or about June 7, 2005, a hail storm damaged the Nursery crops and stock. Plaintiff filed an insurance claim with Great American on behalf of the Nursery.

On April 7, 2006, a hail storm and tornado again damaged Plaintiff's nursery stock, and the Nursery filed a notice of loss with Great American.

Great American notified RMA of Plaintiff's potentially large claim. RMA accepted Plaintiff's claim for large claim review under the SRA and elected to participate with Great American in the loss determination. RMA personnel joined with Great American in completing the loss adjustment of the Nursery's losses.

---

[5] A more thorough history of the crop insurance program can be found at www.rma.usda.gov/aboutrma/what/history.

[6] All facts are taken from the complaint and accepted as true for purposes of this motion only.

5

On October 3, 2007, RMA issued a denial of Plaintiff's claim and reaffirmed that denial after reconsideration on October 2, 2008. RMA denied Plaintiff's claims on the ground that Plaintiff had misrepresented the 2006 losses. RMA also denied Plaintiff's claims because Plaintiff failed to follow good nursery practices, elected not to insure two plant types, and failed to complete the 2006 Plant Inventory Value Report (PIVR).

Plaintiff filed an appeal of RMA's denial with the NAD under the terms of the policy, thereby exhausting administrative remedies. On January 27, 2009, and March 3, 2009, Plaintiff had administrative hearings before the NAD.

On May 1, 2009, NAD denied Plaintiff's appeal on the grounds that Plaintiff misrepresented the 2006 losses by claiming that approximately 75,224 plants were damaged by a 2006 hail storm even though the plants had actually been damaged in 2005. Plaintiff had already received indemnity for the 2005 damages. This misrepresentation of the 2006 damages allegedly violated Plaintiff's insurance policy under 7 C.F.R. § 457.8 and § 27 of the Common Crop Insurance Basic Provisions.

On June 10, 2009, Plaintiff filed a request for Director review of the NAD's October 2007 decision and October 2008 reaffirmation. The Director reaffirmed the NAD's hearing officer's determination.

Pursuant to Section 20(e) of the applicable insurance policy and the FCIA, 7 U.S.C. § 1501, *et seq.*, Plaintiff filed suit against the defendants Great American[7], FCIC, RMA, and USDA requesting a judicial determination on the validity of all Plaintiff's claims for damages

---

[7] The court dismissed Plaintiff's claim against Great American on November 20, 2009. (Doc. No. 7)

and on the amount of damages to which Plaintiff is entitled.[8]

## ARGUMENT

    A.    <u>The court must restrict its review of the FCIC's denial of Plaintiff's insurance claim to the administrative record.</u>

Because the FCIA contains no standard of judicial review, challenges to the FCIC's decision under the FCIA is reviewed pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq*. *See, e.g., Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (APA answers question of "whether petitioners are entitled to any judicial review"), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977); *see also Clarke v. FCIC*, 2 F.3d 1149 n.1 (4th Cir. 1993) (adopting Seventh Circuit approach that APA applies because the FCIA contains no standard of review); *Old Republic Ins. Co. v. FCIC*, 947 F.2d 269, 282 (7th Cir. 1991).[9]

Although the Sixth Circuit has not ruled on this precise point (concerning review of FCIC decisions), it has indicated that APA record review and not de novo trial is appropriate in *Fryman v. FCIC*, 936 F.2d 244, 246 (6th Cir. 1994). In that case, the claims were bifurcated for

---

[8] Plaintiff filed another suit on May 19, 2010 (Case No.: 4:10-CV-31). Defendants have not yet answered this claim.

[9] The Fourth and Seventh Circuits went on to apply the arbitrary and capricious standard of the APA as found in 5 U.S.C. § 706(2)(A) to review the decisions of the FCIC. Although the arbitrary and capricious language is a "standard of review" as opposed to a "scope of review" (*de novo* versus record review) section 706(2)(A) has long been held to involve only a record review. *Volpe*, 401 U.S. 402, 415, (1971). Only section 706(2)(F) of the APA provides for a *de novo* review and then in only two limited circumstances not present in this case. The record review requirement of formal proceedings undertaken by agencies was clearly adopted by Congress in the APA in 5 U.S.C. § 556(e). "The transcript of testimony and exhibits, together with all papers and requests filed in the proceeding, constitutes the exclusive record for decision. . . ." *Id.*

7

trial (and those against the FCIC tried in a bench trial), apparently based on the analysis urged by the defendants. While the cases does not discuss the difference in treatment between private insurers and FCIC, it did bifurcate trail and place the court as trier of the fact in the record review.

In *Rain & Hail Insurance Service, Inc. v. FCIC*, 229 F. Supp. 2d 710, 715-16 (S.D. Tex. 2002), the district court faced the issue raised by Plaintiff here. The plaintiffs asserted that the FCIA's "sue and be sued" language of Section 1506(d), which confers "exclusive original jurisdiction" in district courts for suit against FCIC, necessarily required a *de novo* review. *Id.* at 715. The court, however, determined that case law "overwhelmingly" dictated that the APA's arbitrary-and-capricious standard applied. *Id.* at 715 n.5.

The case most often cited for the proposition advanced by Plaintiff here is *Hammit v. FCIC*, 712 F. Supp. 832 (D. Colo. 1989). In *Hammit*, the farmer-insured, after administratively exhausting an indemnification claim before the FCIC, filed suit in district court and claimed he was entitled to a *de novo* review of the denial. The court held that although the underlying action taken by the FCIC in denying the indemnity claim was "an adjudication proceeding governed by the provisions of the APA," the court's scope of review was *de novo* because the FCIA did not specify a scope of review, nor did it use such terms as "review" when waiving sovereign immunity against the FCIC and allowing suit to be commenced in district court against the FCIC. *Id.* at 833-34.

Simply, *Hammit*, which stands alone in its holding, was incorrectly decided. The Supreme Court has long held that when Congress has not specified a scope of review for agency action, there is a presumption that courts must look to the agency record and not perform a *de*

8

*novo* review. *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 714-15 (1963). This presumption has been followed not only when the statutory language specifically provides for "review" of the administrative action, as in *Carlo Bianchi & Co.*, but also when the statute includes language such as "commenc[ing] a civil suit" or "bring[ing] an action." *Cabinet Mts. Wilderness v. Peterson*, 685 F.2d 678, 685 (D.C. Cir. 1982), *overruled on other grounds*, *Sabine River Auth. v. United States Dep't. of Interior*, 951 F.2d 669 (5th Cir. 1992); *Guaranty Savs. & Loan Ass'n v. Federal Home Loan Bank Bd.*, 794 F.2d 1339, 1342 (8th Cir. 1986); *see also Marietta Franklin Sec. v. Muldoon*, 30 F.3d 134, 2-3, (6th Cir. 1994) affirming decision below, 770 F. 2d 1212, 1221-22 (S.D. Ohio 1991) (holding, as to Office of Thrift Supervision review, a hybrid standard was appropriate when the record was not fully developed).

The *Hammit* court appears to have turned on its head the presumption by applying a *de novo* review in absence of specific statutory language. Indeed, the Fourth Circuit in *Clarke* recognized, in *dicta*, the impropriety of the *Hammit* court's presumption in a case involving FCIC. In sum, the *Hammit* decision did not heed Supreme Court direction in applying a *de novo* review to FCIC's actions. Moreover, its holding has not been followed by any court addressing this issue with respect to the FCIA, and the Fourth Circuit specifically expressed "grave doubts" about the propriety of the *Hammitt* court's *de novo* holding. *Clarke*, 2 F.3d 1149 at n.1. Accordingly, this court should reject the holding of *Hammit* and follow the majority of courts that have applied Supreme Court precedent to subject the FCIC's decisions under the FCIA to record review under the APA.

Furthermore, regardless of whether *Hammit* was correct when decided, its holding has been supplanted by a subsequent act of Congress. Specifically, in 1994 Congress created the new

9

NAD. Under the 1994 amendments, Congress provided for appeals of adverse decisions of FCIC to be heard by NAD at evidentiary hearings. 7 U.S.C. § 6996(a). The 1994 revision also made mandatory those appeal procedures before a claimant could bring a civil action in a court of competent jurisdiction. 7 U.S.C. § 6912(e). This exhaustion requirement was discussed by the court in the *Rain & Hail Insurance Service, Inc. v. FCIC*, 229 F. Supp. 2d at 766. Most importantly, since 1994, the law has specifically provided that any review of a NAD final decision be undertaken in accordance with the APA. 7 U.S.C. § 6999. This section states: "A final determination of the Division shall be ***reviewable*** and enforceable by any United States district court of competent jurisdiction in accordance with Chapter 7 of Title 5." *Id.* (emphasis added.).

Accordingly, taking into consideration the silence on scope or standard of review in Sections 1506(d) and 1508(j) of the FCIA and the presumption that goes with such silence, together with the establishment of NAD in 7 U.S.C. § 6992, the exhaustion requirement of Section 6912(e), and the mandate of Section 6999 that the APA applies to any judicial review of a NAD determination, the Court's review here must be limited to the administrative record. Moreover, because the APA's record review applies to this civil action, any request for discovery, or trial by jury, is not well taken.[10]

---

[10] To the extent Plaintiff argues that it is entitled at least to a jury trial on it's common law and state-law claims for damages against the defendants, the insurance policy (set out in the regulations at 7 C.F.R. § 457.8) specifically prohibits such damages to be obtained from FCIC unless the insured first obtains a determination from FCIC that terms of the policy or procedures issued by FCIC were not properly followed, and such failure resulted in the insured receiving an amount less than what the insured was entitled to receive. 7 C.F.R. § 457.8 ¶ 20 (e)(3) and ¶ 20 (i), [for reinsured policies]. No such determination was reached here; thus, Plaintiff may not seek damages against the FCIC. Whether such damages can be obtained against the other defendants is also unlikely given the adjustment of the indemnity claim by FCIC, and other

10

The cases that have followed *Clarke* compel a similar result. In *Rain & Hail Insurance Service, Inc.*, Plaintiff, private provider of multi-peril crop insurance plans, filed suit against the FCIC and RMA alleging breach of the SRA and a constitutionally impermissible taking. The court opined that under *American Growers Insurance Company v. FCIC*, 210 F. Supp. 2d 1088, at 1092-93 (S.D. Iowa, 2002), that sections of FCIA §1506(d) and § 6912(e) must be considered "together and in harmony."[11] The court found that both these sections stand for the provision that the plaintiffs must exhaust their administrative remedies before bringing suit in federal district court. *Id.* In *American Growers,* the court believed that Congress intended for "judicial review of plaintiff's claims within an administrative review context." *Id.* at 4, 1093.

The Fifth Circuit in *Wilson v. United States Department of Agriculture*, 991 F.2d 1211, 1215 (5th Cir. 1993), clearly set out the general standard that Fifth Circuit courts use in reviewing FCIC agency determinations. Though in that case the court ultimately held that FCIC insurance contract terms, such as notice requirements, have the force of law and must be reviewed *de novo*, the court also stated that it generally defers to an agency's interpretation of its own regulations and rules. Quoting the Supreme Court, the *Wilson* court explained: "We generally defer to an agency's interpretation of its own regulations and procedural rules . . . . We cannot do so in this matter, however, as the FCIC has put forth two positions that are at loggerheads with each other." *Id.* at 1217 (quoting *FCIC v. Merrill*, 332 U.S. 380, 385(1947).

In *Old Republic Insurance Company. v. FCIC*, 947 F.2d 269, 277 (7th Cir. 1991), the

---

regulations that preempt such damages. 7 C.F.R. § 400.176(b); § 400.352(b)(4). *But see Skymont Farms v. FCIC, et al.*, 4:09-CV-65 (E.D. Tenn., filed June 29, 2010 (Doc. No. 28)).

[11] This does not require resolution of the issue of whether § 6912(e) is jurisdictional. *See Ace Property & Cas. Ins. Co. v. FCIC*, 440 F.3d 992, 999 (8th Cir. 2006).

11

FCIC enlisted private insurance companies per its instructions under 7 U.S.C.S. §§ 1501-1520 and reinsured crop loss policies issued by these private insurers. In the course of transactions, the FCIC unintentionally overpaid the insurers, which then refused to return the overpayments to FCIC and filed a declaratory judgment action. FCIC filed a motion for summary judgment, which the district court granted and the appellate court affirmed. The Seventh Circuit also held that FCIC's procedures in recovering the overpayments complied with due process requirements.

The court in *Old Republic* first examined the district court's summary judgment using the *de novo* standard of appellate review. Subsequently, in examining the merits of the FCIC's findings, the court used the APA "arbitrary and capricious standard of review" as delineated in 5 U.S.C. § 706(2)(A). The court specifically addressed the fact that FCIA does not contain an explicit standard of review and held that "the court is not empowered to substitute its judgment for that of the agency" and the court "must consider whether the agency's decision was based on consideration of the appropriate factors and whether there was clear error of judgment." *Id.* at 282.

Record review is appropriate especially when the administrative determination is based on extensive agency review of the record. In this case, any due process argument is swayed in favor of record review when, as here, at the administrative hearing (the transcript for which exceeded 7,000 pages), the claimant was represented by counsel and the hearing was full and complete. Clearly, Congress did not intend to retry such voluminous cases in light of the clear preference in the law for deference to the agency and in light of its creation of RMA in the first place. *De novo* review under these circumstances misconceives the concept of "judicial review" and converts it to "judicial retrial." Common sense and case law decry such a result.

B. The agency has the expertise in the matter and the court should defer to its record.

In *Chevron, U.S.A., Inc. v. National Resources Defense Counsel, Inc.*, 467 U.S. 837, 844 (1984), the Supreme Court set forth the legal standard of review for agency determinations. Specifically, the Court stated:

> We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations has been consistently followed by this Court whenever . . . a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations.

*Id.*

The Sixth Circuit has consistently upheld the narrow standard of review set forth in *Chevron*. In *Debolt v. Espy*, 832 F. Supp. 209, 214 (S.D.Ohio, 1993), the court reviewed a decision by the Farmer's Home Administration (FmHA) using the "arbitrary and capricious standard" in the APA, 5 U.S.C. § 551. Using that standard, the court found that neither the United States Housing Act of 1949 ("USHA") nor the Fair Housing Act compel the FmHA to finance construction of homes with additional bedrooms for families.

In *R.R. Ventures, Inc. v. Surface Transportation Board*, 299 F.3d 523, 547-48 (6th Cir. 2002), the court was asked to review, among other things, whether the decisions of the Surface Transportation Board (STB) to lower the salvage value of the track and materials and to order the railroad company to escrow $375,000.00 of the sale proceeds to pay for track restorations and repairs were arbitrary or capricious. The court gave considerable weight and deference to the STB's interpretation of the statute it administered and held that STB's determination was not arbitrary or capricious. *Id.* at 548. The court stated, "When asked to review a decision of an administrative agency, this Court employs a narrow standard of review." *Id.* at 547 (quoting

13

*Simms v. National Traffic Safety Admin.*, 45 F.3d 999, 1003 (6th Cir. 1995)). In *R. R. Ventures*, the court also found that it "must give considerable weight and due deference to the [STB's] interpretation of the statutes it administers unless its statutory construction is plainly unreasonable." *Railroad Ventures, inc. v. Surface transportation Board,* 299 F. 3d at 548 ); *see generally Chevron*, 467 U.S. at 843-45 (holding that the reviewing court must ask only whether agency action "is based on a permissible construction of the statute").

Admittedly, the court in *R.R. Ventures* conceded that "[w]hile an agency's interpretation of a statute is entitled to deference, 'federal courts bear the ultimate responsibility for interpreting federal statutes.'" *Id.* at 548 (quoting *Crounse Corp. v. ICC*, 781 F.2d 1176, 1183 (6th Cir. 1986) (quoting *Meade Township v. Andrus*, 695 F.2d 1006 (6th Cir. 1982))). However, because of the agency's expertise in the administration of congressional statutes, federal courts generally give deference to their determinations and limit their scope of review to the administrative record.

In a Third Circuit case, *Southwestern Pennsylvania Growth Alliance v. Browner*, 121 F.3d 106 (3d Cir.1997), the court examined the validity of the Environmental Protection Agency's denial of the plaintiff's request to re-designate the Pittsburgh-Beaver Valley Area to attainment status. The court affirmed EPA's final determination denying redesignation on the ground that none of the five relevant § 7407(d)(3)(E) criteria were satisfied. The court stated, "A reviewing court 'must generally be at its most deferential' when reviewing factual determinations within an agency's area of special expertise.'" *Id.* at 117.

The Eighth Circuit also upheld *Chevron* in *Kinion v. United States*, 8 F.3d 639, 641 (8th Cir. 1993). The court considered whether the government was obliged under the Agricultural

14

Case 4:09-cv-00101 Document 22 Filed 06/30/10 Page 14 of 19

Credit Act of 1987 to adhere to its first calculations of the plaintiff's farm's net recovery buyout value. The court affirmed the district court's decision and found in favor of the government. The court underscored the fact that "[their] review of an agency's interpretation of its own regulations "is a narrow one, deferential to the agency's interpretation . . . and only permitting reversal if the agency action is without a rational basis." *Id.* at 641. (quoting *Missouri v. United States Dep't of Educ.*, 953 F.2d 372, 375 (8th Cir.1992); *see also Chevron,* 467 U.S. at 843; *Parker v. United States Dep't of Agric.*, 879 F.2d 1362, 1365 (6th Cir.1989) (analyzing action by the FmHA and stating that "[a] court should defer to an agency's interpretation of its own regulations so long as that interpretation is reasonable")).

The Fifth Circuit also gives great deference to agency expertise. In *Brouillette v. United States Department of Agriculture, Agriculture Stabilization and Conservation Service*, 840 F. Supp. 55, 57 (W.D. La., 1993), the United States Department of Agriculture, Agricultural Stabilization and Conservation Services (ASCS) denied plaintiff full compensation for crop loss claimed under the Disaster Payment Program administered by the ASCS on the ground plaintiff used substandard farming practices. The court upheld ASCS's decision, holding "we are required to apply a standard of review that is specific to the review of administrative agencies. This standard is one of great deference and does not include a *de novo* review of the facts. Reversal of an agency decision is appropriate only upon a finding that the administrative adjudication was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 57 (quoting *Bank of Commerce v. City Nat'l Bank*, 484 F.2d 284, 289 (5th Cir.1973), cert. denied, 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 109 (1974)).

In a case applying Ninth Circuit law, *Hilderbrand v. United States*, 905 F. Supp. 774,

15

776-77 (E.D. Cal.1995), the court denied the plaintiff-farmer's request for judicial review of the FmHA decision that denied the farmer's application for debt restructuring. The court explained, that while some exceptons existed, the standard of review permitted only review of the administrative record. The court stated "The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Id.* at 776. (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

    C.    <u>Alternatively, the court should follow the standard of review set forth in other agency enabling statutes because the standard of review is not specified under the FCIC.</u>

The FCIA statute does not specify the standard of review for FCIC decisions. *Rain & Hail Ins. Serv. v. FCIC*, 229 F. Supp. 2d 710, 715 (5th Cir., 2002); *Old Republic Ins. Co. v. Federal Crop Ins. Corp.*, 947 F.2d 269, 282 (7th Cir., 1991).

The absence of a standard of review does not require use of the *de novo* standard. In *Varnadore v. U.S.*, 785 F. Supp. 550, 555 (D.S.C.1991), the court reviewed a decision by the Food and Nutrition Service (FNS) imposing a sanction on the store owner and her store for selling ineligible nonfood items in exchange for food stamps. The court found that the Food Stamp Act, 7 U.S.C. § 2023(a) and 7 C.F.R. 279.10(c), specifically prescribes *de novo* review of food stamp decisions. This case gives weight to the idea that if Congress had wanted *de novo* review, it would have made it explicit in the statute.

Absent a specified standard of review, the court must look to other agency enabling statutes and follow the same procedure. Under *Excel Corp. v. United States Department of Agriculture*, 397 F.3d 1285, 1295 (10th Cir. 2005), the court determined whether Grain Inspection, Packers and Stockyards Administration (GIPS) and USDA committed errors of law

16

in interpreting § 201.99. The court found that petitioner violated 7 U.S.C. § 192(a) of the Packers and Stockyards Act and an implementing regulation, 9 C.F.R. § 201.99(a), by failing to disclose to hog producers a change in the packer's formula for computing the "lean weight" of hog carcasses. In its decision, the court noted that it "owe(s) 'substantial deference'" to the USDA's interpretation of that regulation. *Id.* at 1295. (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512(1994)). The court explained that deference must be given to an agency's determination and record because the agency has been "charged by Congress with administering the [Packers & Stockyards] Act," *see* 7 U.S.C. § 228 (outlining the authority of the Secretary of the USDA with regard to the [Packers & Stockyards] Act), and § 201.99 is one of the regulations intended by the USDA to implement the [Packers & Stockyards] Act.

In an FSA/UDSA case from this circuit, *Estate of James v. USDA*, 2003 WL 24135441 (E.D. Tenn. Sept. 22, 2003), the court declared "Pursuant to 7 U.S.C. § 6999 a final determination of the Director is reviewable and enforceable by any United States District Court in accordance with the Administrative Procedure Act. 5 U.S.C. §§ 701-706." (quoting *Deaf Smith County Grain Processors, Inc. v. Glickman*, 162 F.3d 1206, 1213 (D.C. Cir.1998). The APA standard of review of agency decisions as set out in 5 U.S.C. §§ 706 is as follows:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall: 1) compel agency action unlawfully withheld or unreasonably delayed and 2) hold unlawful and set aside agency action findings and conclusions found to be (A) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; (B) contrary to constitutional right power privilege or immunity; (C) in excess of statutory jurisdiction authority or limitations or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo

17

by the reviewing court. In making the foregoing determinations, the court shall review the <u>whole record</u> or <u>those parts of it cited</u> by a party and due account shall be taken of the rule of prejudicial error.

5 U.S.C. §§ 706 (emphasis added).

Many more cases demonstrate that agency decisions are consistently reviewed under the APA standard of review, not under the *de novo* review standard somewhat opaquely set forth in the 1980s by the district court in *Hammit*. For example, in review of a decision of the Food & Drug Administration ("FDA)" *Wyeth Holdings Corp. v. Sebelius*, 603 F.3d 1291, 1296 (Fed. Cir. 2010), the court held that it must review the FDA's decisions under the APA arbitrary and capricious standard. 5 U.S.C. § 706(2)(A). In a medicaid case, brought in the district courts of Tennessee, the court declared that "[w]here Congress or administrative agencies themselves lay down procedures and regulations, these cannot be ignored in deference to administrative discretion." *Rosen v. Tennessee Comm'r of Fin. & Admin.*, 280 F. Supp. 2d 743, 837 (M.D. Tenn. 2002) (quoting *Antonuk v. United States*, 445 F.2d 592, 595 (6th Cir. 1971)). The role of the RMA, as mandated by the Congress, is eviscerated if the case must be retried de novo in district court.

## **CONCLUSION**

In reviewing the FCIC's decision, the Court should limit its review to the administrative record and apply the arbitrary and capricious standard of review under the APA.

18

Respectfully submitted,

JAMES R. DEDRICK
United States Attorney

By: *s/M. Kent Anderson*
M. KENT ANDERSON (BPR #004199)
Assistant United States Attorney
1110 Market Street, Suite 301
Chattanooga, Tennessee 37402
Kent.Anderson@usdoj.gov
(423) 752-5140

OF COUNSEL:

Steven Youngpeter
Senior Attorney
U.S. Department of Agriculture
Office of General Counsel
4121 Carmichael Road
Suite 205, Sterling Centre
Montgomery, AL 36106

CERTIFICATE OF SERVICE

      I hereby certify that on June 30, 2010, a copy of the foregoing Brief In Support of Record Review under the APA was electronically filed. Notice of this filing will be sent by operation of the Court's electronic filing system to plaintiffs' attorney, who is registered as a user of the electronic case filing system as indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

*s/M. Kent Anderson*
M. KENT ANDERSON
Assistant United States Attorney

19

Case 4:09-cv-00101   Document 22   Filed 06/30/10   Page 19 of 19