UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION
WINCHESTER, TENNESSEE

| | |
|---|---|
| **DERWOOD STEWART d/b/a,** ) <br> **STEWART'S NURSERY AND FARM** ) <br> ) <br> **PLAINTIFF,** ) <br> ) <br> **VS.** ) <br> ) <br> **FEDERAL CROP INSURANCE** ) <br> **CORPORATION; RISK** ) <br> **MANAGEMENT AGENCY;** ) <br> **UNITED STATES DEPARTMENT** ) <br> **OF AGRICULTURE; AND GREAT** ) <br> **AMERICAN INSURANCE COMPANY,** ) <br> ) <br> **DEFENDANTS.** ) | **CIVIL ACTION NO. 4:09-cv-101** <br> **JURY TRIAL DEMANDED** |

**REPLY MEMORANDUM TO DEFENDANTS' BRIEF IN SUPPORT OF RECORD REVIEW UNDER THE APA**

7 USCA 1508 (j)(2)(A) is clear and unambiguous in its language. "[I]f a claim for indemnity is denied by the Corporation or an approved provider on behalf of the Corporation, an action on the claim may be brought against the Corporation...." This statute confers Plaintiff and others similarly situated the ability to sue the FCIC. In essence, Plaintiff may bring a lawsuit to enforce his contract for crop insurance. This type of lawsuit is no different than any other plaintiff who seeks to enforce a contractual payment. As such, Plaintiff is not limited to a review of the administrative action below under an arbitrary and capricious standard, as urged by Defendants. Rather, Plaintiff's case should proceed like any other suit, with full discovery and trial by jury. The language at §1508 (j)(2)(A) is in sharp contrast to the language found at §1508 (a)(3)(B)(iii), which deals with judicial review of bad farming practices, and which specifically

provides for "review" of the administrative decision under an arbitrary and capricious standard. It is unreasonable to posit that Congress meant for this same standard to apply in the situation at bar, when the language used to confer such limits to review appears in another place in the same statute and yet not at 1508 (j)(2)(A).

Defendants' brief is correct in its assertion that "the Sixth Circuit has not ruled on this precise point (concerning review of FCIC decisions)." However, there is nothing in Fryman v. FCIC, 936 F.2d 244 (6th Cir. 1994), that supports Defendants' assertion that the Sixth Circuit "indicated that APA record review and not de novo trial is appropriate" in this type of proceeding. Dicta in Fryman mentions that all claims against the FCIC in that case were bifurcated and a "bench trial" was held. Id. at 246, 248. There is no mention whatsoever as to what the scope of review was, and there is certainly no indication or affirmation that a record review was performed by the trial court in that case. This brief allusion, without any more information, is of no assistance to this court on the question of the scope of review.

Similarly, Wilson v. United States Department of Agriculture, 991 F.2d 1211 (5th Cir. 1993), cited by Defendants, arguably supports Plaintiff's position. In that case, the Fifth Circuit drew a distinction between Plaintiff's claim against the FCIC to enforce his insurance policy and his claim against the ASCS to reverse the denial of disaster payments. Plaintiff's claim against the FCIC was reviewed *de novo*, while the claim against the ASCS was a record review under an arbitrary and capricious standard. Id., at 1215-16.

Defendants have also put forth the position that this court should defer to the agency's determination due to the specific expertise it possesses in the administration of congressional statutes. This theory leaves the fox guarding the henhouse, and is particularly inappropriate when, as here, there is no requirement for specialized knowledge to determine the ultimate issue

to be decided.  The ultimate determination and basis for the denial of Plaintiff's claim was that the nursery did not destroy all crops for which a previous claim had been made.  To that end, a brief recitation of the facts presented at the appeal on this issue may be helpful.

Stewart's Nursery provided overwhelming proof that all plants certified to be destroyed on the certification form signed by Michael Gregory and Derwood Stewart were in fact destroyed. Derwood Stewart testified that Michael Gregory, an agent of the private insurance company covered by the FCIC, tagged the trees to be destroyed and came back to see that the trees were destroyed.  Mr. Gregory testified he saw some of the trees being destroyed and that he was comfortable the rest had been destroyed, confirming Mr. Stewart's account.  The certification of all the plants to be destroyed was filled out by the insurance company adjuster and signed by the Great American Insurance adjuster, Michael Gregory.

Benito Cruz testified that he works for Stewart's Nursery and was there during the 2005 claim period as well as the 2006 tornado.  Benito Cruz took Mr. Gregory around the fields when Mr. Gregory tagged the blocks of trees to be destroyed.  The tags were with a pink or red ribbon.  Benito Cruz testified Mr. Gregory came back and looked at the piles of trees in the fields and container pots to be destroyed.  Benito Cruz confirmed that all trees tagged by Mr. Gregory were destroyed.  Willis Crouch, a bulldozer contractor, said that he pushed down the field grown plants that were tagged and that an inspector came and checked on the destruction.  Mr. Crouch stated he destroyed everything he was told to destroy.

Mr. Gregory was called by RMA as a witness. Mr. Gregory testified that he went through the farm and counted trees and assessed damages.   Mr. Gregory's account for the 2005 and part of the 2006 claim began in October to November of 2005 in which he first counted blocks of trees.  He confirmed that Benito Cruz went with him and told him what plants were in each

block. Mr. Gregory finished his inventory near the end of January 2006. Mr. Gregory gave his field notes to another adjuster, Jeffery Lawson, who did the appraisal. Jeffery Lawson did not appear at the hearing. Mr. Gregory went to the farm and went to each field and was comfortable with the destruction. He did not verify that each plant was destroyed but was satisfied and comfortable the blocks of trees were destroyed as he went around each field. Mr. Gregory ultimately executed a certification that "[i]nsured destroyed all field grown and potted inventory as listed on the certification forms." Mr. Gregory testified he went to each field and was comfortable the trees had been destroyed.

Despite this uncontroverted testimony, the RMA and NAD ultimately denied and upheld the denial of Plaintiff's claim. This decision was not based upon any particular or specialized knowledge of agriculture or crop insurance, but rather the credibility and weight given to witness testimony and exhibits. As such, this court should offer no particular deference to the agency determination. Again, it is important to note that the language found at §1508 (a)(3)(B)(iii), which deals with judicial review of bad farming practices, specifically provides for "review" of the administrative decision under an arbitrary and capricious standard. This distinction is obviously based, at least in part, on the specialized knowledge required in a determination of bad farming practices.

The Plaintiff in this case has filed a lawsuit against the named defendants based upon the United States Department of Agriculture's National Appeals Division's decision upholding the Risk Management Agency's denial of Plaintiff's claim for nursery losses suffered in 2006. Such a suit is governed by the provisions of 7 U.S.C.A. § 1508, and more particularly, § 1508 (j)(2)(A) and (B). The decision was issued on May 15, 2009, and Plaintiff timely filed this lawsuit within the applicable statute of limitations. Under the plain language of 7 U.S.C.A. §

1508, Plaintiff is entitled to a *de novo* review of this decision, and not mere consideration of the agency's decision and the evidence upon which it was based. *Hammit v. Federal Crop Insurance Corporation*, 712 F. Supp. 832 (D. Colorado 1989). Had Congress intended to place similar limitations on judicial claims brought in response to denials of indemnification, it would have said so in §1508 (j), as it did earlier within the very same statute. In the absence of such limiting language, and with an eye toward a liberal construction of the waiver of sovereign immunity conferred through the "sue and be sued" clause contained within the statutory scheme creating the FCIC, this Court should arrive at the same conclusion as that reached by the *Hammit* court and grant *de novo* review of Plaintiff's claim for indemnification.

        GALLIGAN & NEWMAN
        309 West Main St.
        McMinnville, TN 37110
        (931) 473-8405


        BY: /s/ John P. Partin
            John P. Partin, #20921

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing **MEMORANDUM IN SUPPORT OF TRIAL DE NOVO ON PLAINTIFF'S COMPLAINT** has been served upon all Filing Users through the Electronic filing system (electronic filers per the Court's listing are listed below) on this the 19th day of July, 2010.

    M. Kent Anderson
    Assistant United States Attorney
    1110 Market Street, Suite 301
    Chattanooga, TN 37402
    Kent.Anderson@usdoj.gov

        /s/ John P. Partin
        John P. Partin