UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| DERWOOD STEWART d/b/a ) | | |
| STEWART'S NURSERY AND FARM ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | No. 4:09-cv-101 | |
| v. ) | *Lee* | |
| ) | | |
| FEDERAL CROP INSURANCE ) | | |
| CORPORATION, *et al.*, ) | | |
| ) | | |
| Defendants. ) | | |

## **MEMORANDUM AND ORDER**

Plaintiff Derwood Stewart ("Plaintiff") brings this suit alleging that his claims for crop losses caused by a 2006 hailstorm were improperly denied. Great American Insurance Company ("GAIC"), the private insurer who issued Plaintiff's insurance policy, has been dismissed as a defendant. The remaining defendants, Federal Crop Insurance Corporation ("FCIC"), Risk Management Agency ("RMA"), and United States Department of Agriculture ("USDA") (collectively "Defendants") are federal governmental entities. Before the Court are the cross motions of Plaintiff and Defendants regarding the scope of this Court's review [Doc. 21, 22]. Plaintiff seeks de novo review with a jury trial, while Defendants maintain review should be on the administrative record under the Administrative Procedures Act, 5 U.S.C. § 701, et seq. ("APA"). Because Congress explicitly provided for APA review of appeals in this posture, Plaintiff's motion for de novo review [Doc. 21] will be **DENIED** and Defendants' motion for record review under the APA [Doc. 22] will be **GRANTED**.

**I.     BACKGROUND**

   **A.     How Crop Insurance Works**

Some background on the relevant statutes and entities is necessary to explain how Plaintiff, who entered into a contract of insurance with a private insurer, found his way into federal court in a suit against the federal government. When the Federal Crop Insurance Act ("FCIA") was passed in 1938, near the end of the dust bowl catastrophe, private insurance companies "apparently deemed all-risk crop insurance too great a commercial hazard." *FCIC v. Merrill*, 332 U.S. 380, 383 n.1 (1947). So, in order to "improv[e] the economic stability of agriculture through a sound system of crop insurance," 7 U.S.C. § 1502(a), the FCIC, a corporate entity owned by USDA, 7 C.F.R. § 400.701, was empowered to issue crop insurance policies directly to farmers. *See Merrill*, 332 U.S. at 381-82. In 1980, however, as part of a general trend privatizing governmental functions, the FCIA was amended to require the FCIC, "to the maximum extent practicable," to *re*insure policies issued by private insurance companies rather than to issue direct policies. P.L. 96-365 (1980) (codified in relevant part at 7 U.S.C. § 1508(a)(1), (k)(1)).

Under the reinsurance system, a farmer-insured purchases insurance from a private insurer, who then pays a reinsurance premium to the FCIC in exchange for reinsurance. *See generally* USDA, Standard Reinsurance Agreement (2005-2009).[1] The risks borne by the insurer and those borne by the FCIC as reinsurer are allocated according to the terms of the reinsurance agreement. *Id.* Generally, the private insurer is solely responsible for loss adjustment when a claim is submitted

---

[1] The Standard Reinsurance Agreement in effect from 2005-2009 is available from the USDA website at http://www.rma.usda.gov/pubs/ra/05sra_final.pdf.

by its insured.[2] *Id.* However, for "large claims"--those with the potential to exceed $500,000--FCIC has discretion to "participate" in the loss determination. *Id.*[3] In this case, RMA, the agency of the USDA "responsible for the administration of all programs authorized under the [FCIA]," 7 C.F.R. § 400.701, elected to participate in the review of Plaintiff's claim.

### B. Factual Background

At this stage of the litigation, the parties do not dispute the material facts.[4] Plaintiff is the owner and operator of a farming and nursery business known as Stewart's Nursery and Farm. Plaintiff purchased an insurance policy from GAIC for the 2006 crop year, and GAIC entered into a reinsurance agreement with FCIC. In April 2006, a hailstorm damaged Plaintiff's crops and inventory, and Plaintiff filed a claim for his losses. GAIC notified RMA that Plaintiff's claim might exceed $500,000, and RMA participated in the loss determination. Plaintiff's claim was denied, and he filed an administrative appeal with the National Appeals Division ("NAD") of USDA, which hears appeals of several types of USDA decisions, including FCIC decisions. 7 U.S.C. §§ 6991-7002. NAD denied Plaintiff's appeal, and this suit followed.

## II. ANALYSIS

The parties do not dispute that the NAD's denial of Plaintiff's claim is judicially reviewable. The motions before the Court therefore present a straightforward question: when the FCIC denies an insured's claim for indemnity and the insured exhausts his administrative remedies through the

---

[2] Loss adjustment is the "verif[ication of the] information affecting coverage and . . . factual determinations regarding the existence of amount of loss." *Id.*

[3] The procedure for large claims review is set out in Appendix IV to the Standard Reinsurance Agreement, available at http://www.rma.usda.gov/pubs/ra/05sra_appendix_IV.pdf.

[4] Defendants accept Plaintiff's version of the facts for purposes of this threshold dispute. Accordingly, the Court's recitation of the facts is drawn from Plaintiff's complaint [Doc. 1].

NAD, should judicial review be based on the administrative record or a de novo trial? The answer appears similarly straightforward. The statutory provision governing judicial review of an NAD decision states as follows: "A final determination of [NAD] shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with [the APA]." 7 U.S.C. § 6999. APA review is not de novo; rather, an agency's adjudicative decisions will be upset only if its factual findings are arbitrary, capricious, or unsupported by substantial evidence. 5 U.S.C. § 706. This inquiry, furthermore, is based solely on the administrative record. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 419 (1971).[5]

Judging by the parties' pleadings, however, this straightforward answer must be untangled from several other review provisions, each of different vintage and purpose. The original such provision, and the one relied on by Plaintiff, is found at 7 U.S.C. § 1506(d): "[T]he [FCIC], subject to the provisions of section 1508(j)[6] of this title, may sue and be sued in its corporate name . . . ." By Plaintiff's reading, it is simple as that: he argues he may sue the FCIC just as if it were a private party. As Plaintiff contends, a "sue and be sued" clause operates as a liberal waiver of sovereign immunity, unless the waiver is qualified. *See Federal Deposit Insurance Company v. Meyer*, 510 U.S. 471, 480 (1994) (noting that such clauses may be limited by a clear showing of congressional intent). A claimant's right to sue the FCIC, however, is qualified by a 1994 amendment to the FCIA

---

[5] In an extreme case, an agency's findings may be so "unwarranted by the facts . . . that the facts are subject to trial de novo by the reviewing court," *id.* § 706(2)(F), but this "narrow" exception applies only when "agency factfinding procedures are inadequate"--not when a litigant merely claims the agency was wrong. *Overton Park*, 401 U.S. at 415.

[6] Those provisions, among other things, limit venue to the district in which the farm is located and provide for a one-year statute of limitations. They also empower FCIC to promulgate rules governing the "adjustment and payment of claims for losses." 7 U.S.C. § 1508(j)(1)

which made USDA's administrative appeals process a prerequisite to judicial review of an FCIC decision. Federal Crop Insurance Reform Act of 1994, P.L. 103-354 § 212(e) (1994) (codified at 7 U.S.C. § 6912(e) ) ("Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against . . . an agency, office, or employee of the Department."). Similarly, under USDA and FCIC regulations, a hearing before an NAD hearing officer is a prerequisite to judicial review.[7]  7 C.F.R. §§ 11.2; 400.96(a).

Congress has unequivocally stated that review of NAD decisions will be governed by the APA. 7 U.S.C. § 6999. *See also* 7 C.F.R. § 11.13 (same). Agency regulations spell out what this means: The NAD hearing is an "adjudication" within the meaning of the APA, and the procedures governing APA adjudications "shall apply" to NAD hearings. 7 C.F.R. § 11.4(a). Section 554(a) of the APA, which is specifically incorporated into the NAD regulations by reference, is applicable to agency adjudications "*except* to the extent that there is involved . . . a matter subject to a subsequent trial of the law and the facts de novo in a court." Therefore, if NAD hearings involve "matter[s] subject to" de novo court review, then the regulation making § 554 "appl[icable]" to NAD hearings was stillborn and is a legal nullity. It is therefore inescapable that NAD determinations were intended to be reviewed on the record, not de novo. *See Ficus Farm, Inc. v. USDA*, 2008 WL 4057741, at *3 (S.D. Fla. 2008) (stating that review of NAD decisions is on the administrative record).

---

[7] Parties may also seek administrative review by the FCIC before filing an appeal with the NAD. 7 C.F.R. §§ 400.90-400.93. If FCIC denies the claim again on administrative review, the party must then file a second appeal with NAD before seeking judicial review. 7 C.F.R. § 400.96(a). The party may also bypass FCIC review and file an appeal directly with NAD. 7 C.F.R. § 400.92(a).

Plaintiff relies on *Hammitt v. FCIC* to argue that a party who has exhausted his administrative remedies may thereafter take a fresh bite of the apple in federal court. 712 F. Supp. 832 (D. Colo. 1989) ("Once a party has complied with these procedures [for obtaining administrative review of FCIC determinations], the FCIC's organic statute provides that party with the right to bring an action against the FCIC on its claim for indemnity."). Defendants criticize *Hammitt*'s reasoning and argue that the right to bring an action for indemnity does not necessarily entail a right to de novo trial. The Court need not opine whether *Hammitt* was wrongly decided, however, because *Hammitt*, decided in 1989, predates the NAD and Congress' explicit restriction of judicial review of NAD decisions. P.L. 103-354 §§ 212(e), 279 (1994) (codified at 7 U.S.C. §§ 6912(e), 6999); 7 C.F.R. § 11.2(b). In 1994, Congress settled any confusion in this area by requiring parties to challenge FCIC decisions through NAD review and by making NAD decisions reviewable under the APA.

The Court is aware that none of the statutes or regulations explicitly forbid direct judicial review of an FCIC decision (as opposed to APA review of the NAD decision) after the aggrieved party exhausts his remedies at the NAD hearing, but the Court has no difficulty concluding the prohibition is implicit. *See Rain & Hail Ins. Serv. v. FCIC*, 229 F. Supp. 2d 710, 716 (S.D. Tex. 2002). To allow judicial review of the FCIC decision would render the exhaustion requirement a formality and would cause a tremendous waste of agency resources. Furthermore, even if the FCIC decision were directly reviewable, it would still be subject to APA review, not de novo review. There is no statutory or regulatory provision specifying any other sort of review, and the APA exists to provide for review of agency decisions where the organic statute does not. *See*, *e.g.*, 5 U.S.C. §§ 702 (granting general right of review except where statute provides otherwise); *Rain & Hail*, 229

F. Supp. 2d at 716.

The path from the initial claim denial to record review in federal court is not so tortuous as the briefs (and perhaps this memorandum) would suggest. To summarize, when the FCIC or RMA participates in the denial of an insured's claim through the large claims review process, the insured may sue those governmental entities in federal court. But first, the insured must exhaust his administrative remedies--remedies that include an NAD hearing. Finally, Congress specifically stated that judicial review of NAD decisions are governed by the APA. Here, Plaintiff is entitled to bring suit because he has exhausted his administrative remedies. He is not, however, entitled to circumvent the standard and scope of review specified by Congress.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for trial de novo [Doc. 21] is **DENIED**, and Defendants' motion for record review under the APA [Doc. 22] is **GRANTED**. A separate scheduling order will be entered.

SO ORDERED.

ENTER:

*s/Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE